UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN C. CARO, JR.                                    CIVIL ACTION

VERSUS                                              NO. 23-596-JWD-RLB

BROWN & BROWN OF LOUISIANA, LLC

CONSOLIDATED WITH

ROBERT COWAN                                        CIVIL ACTION

VERSUS                                              NO. 23-597-JWD-RLB

BROWN & BROWN OF LOUISIANA, LLC

And

BROWN & BROWN OF LOUISIANA, LLC                     CIVIL ACTION

VERSUS                                              NO. 23-788-JWD-RLB

JOHN C. CARO, JR., ET AL.

## ORDER

Before the Court is John C. Caro, Jr. and Robert Cowan's Motion to Compel Discovery

Responses. (R. Doc. 29). The motion is opposed. (R. Doc. 30).

I.    Background

These consolidated actions concern whether, and to what extent, non-solicitation

covenants contained in employment agreements executed by Brown & Brown of Louisiana, LLC

("BBLA") and two former employees—John C. Caro, Jr. ("Caro") and Robert Cowan

("Cowan")—are enforceable.[1] Caro and Cowan's employment agreements, which contain the

---

[1] Caro and Cowan were first to file their Complaints against BBLA in this district. *See Caro v. BBLA*, No. 23-596-JWD-RLB, ECF No. 1 (M.D. La. July 25, 2023) and *Cowan v. BBLA*, No. 23-597-JWD-RLB, ECF No. 1 (M.D. La. July 25, 2023). Two weeks later, BBLA filed its Verified Complaint against both Caro and Cowan in the Western District of Louisiana. *BBLA v. Caro, et al.*, No. 23-1047-TAD-DJA, ECF No. 1 (W.D. La. Aug. 8, 2023). BBLA

non-solicitation covenants as amended are attached to their respective complaints. (*See* R. Docs. 1-1, 1-2; *Cowan*, No. 23-597-JWD-RLB, ECF No. 1-1, 1-2). In general terms, the non-solicitation covenants (found in Section 5(b) of the respective employment agreements) preclude Caro and Cowan, for a period of 2 years after their termination dates, from soliciting or accepting business from certain BBLA clients or prospective clients in certain defined geographical areas. (*See* R. Doc. 1-1 at 5; *Cowan*, No. 23-597-JWD-RLB, ECF No. 1-1 at 5).

In their respective Complaints, Caro and Cowan claim that the non-solicitation covenants are invalid and unenforceable pursuant to La. R.S. 23:921[2] because (a) BBLA's parent company Brown & Brown, Inc. (and not BBLA) was actually Caro and Cowan's "employer" for the purposes of the statute and (b) the non-solicitation covenants are facially overly broad and exceed the scope allowed by the statute. (*See* R. Doc. 1; *Cowan*, No. 23-597-JWD-RLB, ECF No. 1).

Caro and Cowan have amended their pleadings to seek damages under the Louisiana Unfair Trade Practices Act ("LUPTA") for attempts to enforce the allegedly invalid non-solicitation covenants. (*See* R. Docs. 11, 12). In their Amended Complaints, Caro and Cowan raise various allegations regarding the conditions of their employment, including allegations of poor management, workplace mistreatment, and reductions in compensation. Neither Caro nor

---

immediately obtained a temporary restraining order ("TRO"), and, in light of the first-filed actions, the TRO was vacated and BBLA's action was transferred to this district. *See BBLA v. Caro, et al.*, No. 23-788-JWD-RLB, ECF Nos. 10, 12, 21 (M.D. La. Aug. 8, 2023). All record document citations in the body of this order refer to *Caro*, No. 23-596-JWD-RLB, the lead case in these consolidated actions.

[2] In pertinent part, the statute provides the following: "Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(C).

Cowan, however, raise any claims against BBLA under federal or state law with respect to constructive discharge, unpaid wages, or harassment or discrimination while employed.

The majority of the allegations regarding Caro and Cowan's conditions of employment are directed at the management style of their direct supervisor, Mark Romero ("Romero"). Caro alleges that Romero caused him and his family "great physical and mental suffering" for the following reasons: Romero subjected Caro to "hostile interactions," "abuse," and "demeaning actions"; Romero "berated" Caro in front of colleagues and in private; and Romero demoted Caro, cut his compensation, and transferred his office location. (R. Doc. 11 at 5-6). Caro specifically alleges that he was "verbally berated" in Romero's office, was called a "fat f***," and was "ignored" by Romero for two weeks. (R. Doc. 11 at 5).

Cowan, on the other hand, does not specifically name Romero in his own pleadings. Nevertheless, Cowan alleges that he suffered from: a "lack of transparency from Brown and Brown management about client and revenue information," a denial of access to information to allow "him to effectively plan, set goals, and ultimately qualify for the company's bonus plan," and an "increasingly toxic work environment, leading to high turnover among [his] team." (R. Doc. 12 at 4-5).

In its own Verified Complaint, BBLA claims that Caro and Cowan have violated their restrictive covenants by soliciting numerous customers on behalf of their new employer, Alliant Insurance Services, in violation of the non-solicitation covenants. (*See BBLA*, No. 23-788-JWD-RLB, ECF No. 1). BBLA also claims that Caro and Cowan tortiously interfered with (and conspired to tortiously interfere with) its business relations with the Louisiana Public Schools Risk Management Agency. BBLA seeks preliminary and permanent injunctive relief enforcing the non-solicitation covenants, as well as an award of damages.

The district judge set a hearing on BBLA's Application for Temporary Restraining Order and Preliminary Injunction ("Motion for Preliminary Injunction") (R. Doc. 17) on December 5, 2023, and allowed the parties to proceed with discovery prior to the hearing. (*See* R. Doc. 24). The undersigned then issued a Scheduling Order governing all deadlines, including a deadline for filing all discovery motions and completing all discovery except experts of July 26, 2024, as requested by the parties. (R. Doc. 26; *see* R. Doc. 25 at 4).[3] The preliminary injunction hearing has been reset to February 20, 2024. (R. Doc. 28).

On November 17, 2023, Caro and Cowan jointly filed the instant Motion to Compel Discovery Responses. (R. Doc. 29). Caro and Cowan seek an order overruling BBLA's objections to interrogatories and requests for production that seek information related to the alleged issues leading to Caro and Cowan's resignation, particularly information pertain to Romero, other employees, and Caro and Cowan's compensation.

The discovery requests in dispute are Interrogatory Nos. 1 and 5, and Requests for Production Nos. 5 and 12-17. These discovery requests respectively seek information regarding BBLA's termination of employees, employees assigned to marketing or customer service teams, Romero's employment files, bonus calculations, and employee exit interviews:

> **INTERROGATORY NO. 1:**
> Identify each and every employee of BB Louisiana and/or BB Inc. whose employment has terminated in the 12-month period before the commencement of this Lawsuit. This Interrogatory is limited to employees who worked in, or were assigned to, the state of Louisiana. For each employee you identify, provide that employee's last known contact information.
>
> **INTERROGATORY NO. 5:**
> Identify members of BB Louisiana and/or BB Inc. Marketing Team and/or Customer Service Representatives who worked in, or were assigned to, the state

---

[3] The parties did not request, and the Court did not order, that discovery would be bifurcated for the purposes of the preliminary injunction hearing and trial on the merits.

of Louisiana. For each employee you identify, provide the number of clients and policies handled by that employee.

**REQUEST FOR PRODUCTION NO. 5:**
Produce the complete personnel files and job description(s) of Mark Romero and any individual identified in response to Interrogatories No. 1 and 4.

**REQUEST FOR PRODUCTION NO. 12:**
Produce documents showing the bonus calculations for Cowan and Caro from January 1, 2018 to the present.

**REQUEST FOR PRODUCTION NO. 13:**
Produce communications between BB Inc. and/ BB Louisiana employees regarding Cowan and Caro's commissions and/or bonus calculations from January 1, 2018 to the present. This includes communications between Mark Romero and/or Keri Pellerin and/or Valerie McGehee and/or Lyndsay Sayes.

**REQUEST FOR PRODUCTION NO. 14:**
Produce all excel spreadsheets created or modified by Keri Pellerin related to commission and/or bonus calculations for BB Louisiana and/or BB Inc. from January 1, 2018 to the present.

**REQUEST FOR PRODUCTION NO. 15:**
Produce communications between Mark Romero and other BB Inc. employees regarding bonus calculations for employees in the Louisiana territory from January 1, 2018 to the present.

**REQUEST FOR PRODUCTION NO. 16:**
Produce all complaints filed against Mark Romero from January 1, 2018 to the present.

**REQUEST FOR PRODUCTION NO. 17:**
Produce all exit interview forms and notes for any former employee who worked in the Louisiana territory. The time limitation for this request is January 1, 2018 to the present.

(*See* R. Doc. 29-2). BBLA responded to each discovery request with various objections, including lack of relevance. (*See* R. Doc. 29-3).

There is no dispute that the parties held a conference in good faith to resolve the issues raised by the instant motion prior to the filing of the instant Motion to Compel. (R. Doc. 29 at 2). It appears that at this conference, Caro and Cowan first raised the prospect of an "unclean hands"

defense to enforcement of the non-solicitation covenants. (*See* R. Doc. 29-1 at 4). While BBLA agreed to provide certain supplemental responses, it has maintained its objections to the discovery requests at issue, specifically asserting that the discovery sought is not relevant to any "unclean hands" defense to enforcement of the non-solicitation covenants. (*See* R. Doc. 29-4).

In support of the instant Motion to Compel, Caro and Cowan focus solely on their assertions that the discovery at issue is relevant to equitable considerations (either the third and fourth factors of the preliminary injunction analysis or as an equitable defense to contract enforcement) to be raised at the preliminary injunction hearing.

## II.    Law and Analysis

### A.    Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

6

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

If a party fails to respond fully to written discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 33 provides that the grounds for objecting to an interrogatory must be stated with specificity and any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure. Fed. R. Civ. P. 33(b)(4). Rule 34 similarly provides that the grounds for objecting to a request for production must be stated with specificity. Fed. R. Civ. P. 34(b)(2)(B). Rule 34 further provides that, "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

**B.    Analysis**

In support of their Motion to Compel, Caro and Cowan argue that the discovery sought is "relevant to the preliminary injunction hearing" by focusing, primarily, on the third and fourth factors of the preliminary injunction analysis. (R. Doc. 29-1 at 16-21). Caro and Cowan also assert that the information sought is relevant to a purported "unclean hands" defense to the

7

enforcement of the non-solicitation covenants. (R. Doc. 29-1 at 19-20). Finally, Caro and Cowan assert that Romero's personnel file is relevant to the issue of whether they were actually employed by BBLA. (R. Doc. 29-1 at 20-21).

Caro and Cowan only address the objection of relevance; they do not address the other objections to the discovery requests raised by BBLA.

### 1.    Relevance to the Third and Fourth Factors of the Preliminary Injunction Analysis

Caro and Cowan primarily argue that "the information requested pertains to the third and fourth factors for granting a preliminary injunction." (R. Doc. 29-1 at 19). The general standards for preliminary injunctive relief are set forth below.

"[I]njunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Group, Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)). A preliminary injunction will only be granted where the moving party clearly demonstrates "(1) a substantial likelihood of success on the merits, (2) a substantial threat that [the moving party] will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to the [non-moving parties], and (4) that granting the preliminary injunction will not disserve the public interest." *Gumns v. Edwards*, No. 20-231, 2020 WL 2510248, at *3 (M.D. La. May 15, 2020) (citing *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (quotation and citation omitted). In the context of a dispute regarding the enforcement of a non-solicitation covenant under La. R.S. 23:921(C), however, the statute provides that "upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent

8

jurisdiction shall order injunctive relief enforcing the terms of the agreement." La. R.S. 23:921(H); *see Deep S. Commc'ns, LLC v. Fellegy*, 652 F. Supp. 3d 636, 668 (M.D. La. 2023) ("[A]lthough La. R.S. 23:921(H) relieves the former employer of the requirement of proving irreparable injury, the former employer still must prove that it is entitled to the relief sought.").

As an initial matter, the scope of discovery is limited to claims and defenses in an action. *See* Fed. R. Civ. P. 26(b)(2). "The fact that the parties are engaging in pre-hearing discovery does not change the general parameters as to what is, or is not, discoverable, although the scope of discovery may be limited to focus on claims and defenses that will be relevant in the context of the upcoming preliminary injunction hearing." *Danieli Corp. v. SMS Grp., Inc.*, No. 21-1716, 2022 WL 2541981, at *1 (W.D. Pa. Mar. 18, 2022). Importantly, other than stating various factual allegations involving their compensation and the acts and omissions of management while they were employed, Caro and Cowan have not alleged any actual <u>claims</u> seeking any relief regarding the conditions of their employment. Among other things, Caro and Cowan have not alleged any claims against BBLA under federal or state law with respect to constructive discharge, unpaid wages, or harassment or discrimination while employed, much less any allegations in support of a finding that the underlying non-solicitation covenants are unenforceable in light of such allegations.[4] Furthermore, Caro and Cowan have not raised any <u>claims</u> against Romero, who is not a named defendant in this action.

Discovery regarding the third and fourth factors of the preliminary injunction analysis is relevant, however, in light of BBLA's claim for preliminary injunctive relief, which seeks

---

[4] In support of their motion, Caro and Cowan argue that Romero "unfairly and improperly manipulated account data to deprive Caro and compensation to which they are entitled" and "created a toxic work environment and employment conditions that were no longer tolerable." (R. Doc. 29-1 at 19-20). Nevertheless, there are no allegations in the pleadings regarding alleged account data manipulation or constructive discharge.

enforcement of the non-solicitation covenants. Nevertheless, the discovery at issue has no bearing on the third and fourth factors of the preliminary injunction analysis. "When addressing [the balance of the equities and the public interest] factors, 'courts must balance the competing claims of injury and must consider the <u>effect</u> on each party of the granting or withholding of the requested relief.'" *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (emphasis added) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)).

Here, Caro and Cowan are seeking an order compelling BBLA to produce information related to the purported reasons for their decisions to leave their jobs. This information has no relevance to any prospective <u>effect</u> of enforcement of the non-solicitation covenants on their current livelihoods (*i.e.*, the threatened harm) or to the public at large. Caro and Cowan have not demonstrated that any acts or omissions by BBLA, or the non-party Romero, during their periods of employment have any bearing on whether they will be harmed by preliminary injunctive relief or whether such relief would disserve the public interest. *See Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903, 916 (W.D. La. 2006) (with respect to non-competition and non-solicitation agreements, the third factor focuses on "whether the threatened injury outweighs any damage that the injunction <u>might cause</u> [the former employee]" and the fourth factor concerns whether and to what extent the agreements comply with Louisiana law) (emphasis added).

Having considered the arguments of the parties, the Court finds that the discovery at issue has no relevance to the third and fourth factors of the preliminary injunction analysis. The Court will address below whether, and to what extent, the sought discovery is relevant to the enforcement of the non-solicitation covenants under La. R.S. 23:921 (and, by extension, the first factor of the preliminary injunction analysis—the likelihood of success on the merits).

2.    **Relevance to the Enforcement of the Non-Solicitation Covenants**

In their pleadings, and in opposition to the Motion for Preliminary Injunction, Caro and Cowan assert that the non-solicitation covenants are invalid and unenforceable pursuant to La. R.S. 23:921 because (a) BBLA's parent company Brown & Brown, Inc. (and not BBLA) was actually Caro and Cowan's "employer" for the purposes of the statute and (b) the non-solicitation covenants are facially overly broad and exceed the scope allowed by the statute. (*See* R. Docs. 11, 12, 19).

In support of the instant Motion to Compel, however, Caro and Cowan assert (although in a conclusory and tangential manner) that the bulk of the discovery sought is relevant to a purported "unclean hands" defense to enforcement of the non-solicitation covenants. (*See* R. Doc. 29-1 at 19-20).  Caro and Cowan also assert, more specifically, that Romero's personnel file is relevant to the claim that Caro and Cowan were not employed by BBLA, and, therefore, the non-solicitation covenants are unenforceable under R.S. 23:921. (*See* R. Doc. 29-1 at 20-21). The Court will address these arguments in turn.

a.    **The Unclean Hands Defense**

In alternative to their primary argument that the discovery sought is relevant to the third and fourth factors of the preliminary injunction analysis, Caro and Cowan briefly argue that discovery regarding their compensation (*i.e.*, Interrogatory No. 5 and Requests for Production Nos. 12-15) is relevant to an unclean hands defense to contract enforcement:

> [T]he requested information does pertain to an unclean hands defense to
> enforcement of the restrictive covenants, particularly at this stage. "The 'equitable
> doctrine of clean hands, sometimes referred to as unclean hands, mandates that
> [h]e who comes into a court of *equity* must come with clean hands." *Pawolsky v.
> Cork*, 337 So.3d 550, 558 (La. App. 5 Cir. 2022) (quoting *H&E Equipment
> Services, Inc. v. Sugar & Power International, LLC*, 215 So. 3d 446, 450 (La.
> App. 1 Cir. 2017)) (other internal citations omitted). Here, Caro and Cowan

11

allege that the contract at issue, purporting to govern their employment, is directly implicated by Brown & Brown's actions during the course of Caro and Cowan's employment. Because BBLA seeks equitable relief enjoining Caro and Cowan from performing certain actions, its prior history with respect to Caro and Cowan's employment and compensation is relevant to this defense.

(R. Doc. 29-1 at 19). Even more briefly, Caro and Cowan assert that discovery regarding Romero's "management style" (i.e., Interrogatory No. 1 and Requests for Production Nos. 5, 16, and 17) is also relevant to "Caro and Cowan's unclean hands defense to the issuance of equitable relief." (R. Doc. 29-1 at 20).

As discussed above, the "equitable" factors at issue in the preliminary injunction hearing—namely the balance of the equities and the public interest factors—do not involve retrospective considerations of employee compensation and treatment. Even assuming that Caro and Cowan have properly raised a defense of unclean hands,[5] they have failed to convince the Court that any such defense would preclude the enforcement of the non-solicitation covenants at issue. At best, the allegations of mistreatment and reduced compensation are collateral issues. *See Vaughn v. St. Helena Par. Police Jury*, 261 F. Supp. 2d 553, 566 (M.D. La. 2002) (in denying motion to dissolve preliminary injunction, stating that "[t]he unclean hands doctrine does not reach supposed bad acts that are collateral to the action before the court.").

Furthermore, there is no dispute that Louisiana substantive law governs the enforceability of the non-solicitation covenants at issue in these consolidated diversity actions. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Stephens v. Witco Corp.*, 198 F.3d 539, 541 (5th Cir. 1999). All of the parties rely on La. R.S. 23:921 to frame whether and to what extent the non-

---

[5] None of the parties have filed a responsive pleading or a Rule 12(b)(6) motion. Caro and Cowan's purported defense of "unclean hands" does not specifically appear in any of their pleadings or in their opposition to BBLA's Motion for Preliminary Injunction. For the purposes of this ruling, however, the Court will assume that Caro and Cowan have sufficiently alleged such a defense in light of the allegations in their Amended Complaints.

solicitation covenants are enforceable. Under Louisiana law, the "equitable doctrine of clean hands, sometimes referred to as 'unclean hands,' mandates that '[h]e who comes into a court of equity must come with clean hands.'" *H&E Equip. Servs., Inc. v. Sugar & Power Int'l, LLC*, 215 So. 3d 446, 450 (La. App. 1st Cir. 2017) (quoting *Cimarex Energy Co. v. Mauboules*, 40 So.3d 931, 945 (La. 2010)). "A party has 'unclean hands' if he engaged in reprehensible conduct, an illegal or immoral act, or a course of conduct naturally calculated, if not deliberately intended, to cause the very conditions that led the other party to seek equitable relief." *H&E Equip. Servs.*, 215 So. 3d at 450 (citing *Bossier Parish School Board v. Pioneer Credit Recovery, Inc.*, 161 So.3d 1007 (La. App. 2d Cir. 2015)). "The law is clear, however, that courts may resort to equity only when "no rule for a particular situation can be derived from legislation or custom.'" *H&E Equip. Servs.*, 215 So. 3d at 450 (citing La. Civ. Code art. 4).[6] "The existence of positive law on the subject precludes the application of equitable concepts." *H&E Equip. Servs.*, 215 So. 3d at 450 (citing *Wier v. Glassell*, 44 So.2d 882, 889 (La. 1950); *Bossier Parish School Board*, 161 So.3d at 1009)).

Caro and Cowan do not cite any statutes or jurisprudence in support of a finding that the alleged acts of an employer or supervisor <u>during</u> employment requires the application of an "unclean hands" defense rendering non-solicitation covenants unenforceable <u>after</u> termination of employment. Louisiana contract law would support a finding that the underlying employment contracts are "absolutely null" to the extent the objects of those contracts are "illicit or immoral." *See* La. Civ. Code art. 2030. But Caro and Cowan submit no arguments in support of a finding of

---

[6] "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages." La. Civ. Code art. 4.

absolute nullity based on the alleged "illicit or immoral" nature of the objects of the non-solicitation covenants or employment contracts in general.

At any rate, Louisiana legislation specifically defines the extent to which non-solicitation covenants are enforceable. *See* La. R.S. 23:921(C); *see also Zanella's Wax Bar, LLC v. Trudy's Wax Bar, LLC*, 291 So. 3d 693, 698 (La. App. 1st Cir. 2019) ("An agreement limiting competition must strictly comply with the requirements of La. R.S. 23:921."). Given that specific legislation defines the scope of whether non-solicitation covenants are enforceable, an "unclean hands" defense is unavailable to Caro and Cowan. *See H&E Equip. Servs.*, 215 So. 3d at 450.

Even if an "unclean hands" defense under Louisiana law is applicable, the allegations in the pleadings regarding their compensation and Romero's "management style" and alleged "mistreatment of employees" do not demonstrate that BBLA committed any "illegal or immoral act" or otherwise acted in a course of conduct naturally calculated or deliberatively intended "to cause the very conditions that led the other party to seek equitable relief." *H&E Equip. Servs.*, 215 So. 3d at 450. Again, Caro and Cowan have not raised any allegations that BBLA (or Romero) violated any federal or state anti-discrimination laws or that they are entitled to unpaid compensation. Moreover, Caro and Cowan have not alerted the Court to a single decision concluding that a non-solicitation covenant is unenforceable given the application of an "unclean hands" defense raising equitable considerations regarding the conditions of employment. The Court is unconvinced that Caro and Cowan's conditions of employment have any bearing on the enforceability of the non-solicitation covenants.[7]

---

[7] The Court notes that Section 3 of both employment agreements state these Caro and Cowan were at-will employees and that the non-solicitation covenants were enforceable regardless of whether Caro and Cowan were terminated with cause. (*See* R. Doc. 1-1 at 2-3; *Cowan*, No. 23-597-JWD-RLB, ECF No. 1-1 at 2-3).

In short, the Court concludes that the discovery sought is not relevant for the purposes of establishing an unclean hands defense to enforcement of the non-solicitation convents.

### b.    Romero's Personnel File

The Court will, however, require BBLA to produce a copy of Romero's personnel file and job descriptions as sought pursuant to Request for Production No. 5. This discovery is relevant to Caro and Cowan's claim that they were not employed by BBLA, and is otherwise proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

Caro and Cowan argue that Romero's personnel file is relevant because it contains information that will establish that Romero, their direct supervisor, was an employee of Brown & Brown, Inc., and, therefore, Caro and Cowan were also employees of Brown & Brown, Inc. (as opposed to BBLA). This theory of an employer-employee relationship is based on Brown & Brown, Inc's direction and control of Caro and Cowan's employment. (*See* R. Doc. 29-1 at 21-22). This theory differs than the one alleged by Caro and Cowan in their pleadings, which focuses on how Brown & Brown, Inc. is their employer for the purposes of their W-2 forms. (R. Doc. 11 at 10; R. Doc. 12 at 9). Caro and Cowan asserted this same theory—which is based on the "compensation" test found in La. R.S. 23:302—in opposing BBLA's Motion for Preliminary Injunction. (*See* R. Doc. 19 at 6-8).

BBLA observes this change in theory, asserting that "[s]hould Caro and Cowan be on board with the control test as the method for determining whether BBLA and/or [Brown & Brown, Inc.] was their employer, BBLA would have no objection to the production of Mr. Romero's personnel file, subject to a protective order maintaining the confidentiality of Mr. Romero's personnel file." (R. Doc. 30 at 8).

The Court need not determine, at this time, the appropriate test for establishing an employer-employee relationship for the purposes of enforcement of a non-solicitation covenant under La. R.S. 23:921. It is sufficient to note that the foregoing statute does not define the employer-employee relationship, and none of the parties have set forth any law establishing the proper test to consider for the purposes of La. R.S. 23:921.

Accordingly, the Court concludes that information regarding Brown & Brown Inc.'s purported direction and control of Caro and Cowan's employment falls within the scope of discovery. In relevant part, Caro and Cowan's Request for Production No. 5 seeks the production of "the complete personnel files and job description(s) of Mark Romero." (*See* R. Doc. 29-2 at 7). The Court will limit this request to documents within Romero's personnel files (as well as Romero's "job descriptions" that may not be found within his personnel file) that pertain to Caro and Cowan's claim that Romero was employed by Brown & Brown, Inc. (as opposed to BBLA).

The Court recognizes that Romero's personnel file will contain information that has no relevance to the employer-employee relationship (including personal identifiers and medical information). Accordingly, BBLA may redact or withhold information contained in Romero's personnel file that is irrelevant for the purposes of establishing an employer-employee relationship under the theories asserted by Caro and Cowan. Given that the Court is unaware of the scope of information contained in Romero's personnel file, the Court will require BBLA to accompany the production with a written log identifying information within Romero's personnel file that has been redacted or withheld. This log must provide the following: (1) a description of the subject matter of the withheld document or redacted information; (2) the date, author(s),

16

recipient(s), if any, of the withheld document or redacted information; and (3) the asserted basis for withholding the document or redacting information.[8]

Within **7 days** of the date of this Order, the parties shall either enter into a confidentiality agreement with respect to the production of Romero's personnel file, as limited above, or seek entry of a joint protective order governing the exchange of this confidential information. BBLA shall immediately produce Romero's personnel file, as limited above, after the execution of a confidentiality agreement or the entry of a joint protective order governing the exchange of this confidential information.

## III.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Caro and Cowan's Motion to Compel Discovery Responses (R. Doc. 29) is **GRANTED IN PART and DENIED IN PART.** The parties shall bear their own costs.

**IT IS FURTHER ORDERED** that BBLA shall produce a copy of Romero's personnel file and "job descriptions" that fall outside of his personnel file, as sought by Request for Production No. 5, as limited by the terms of this Order.

Signed in Baton Rouge, Louisiana, on January 24, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] To the extent BBLA withholds information on the basis of the attorney-client privilege and/or the work product doctrine, this log must also provide all information required by Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure and Local Rule 26(c).